## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA - BROWARD DIVISION

Divya Khullar Esq. and
Khullar P.A.,
          PLAINTIFFS,

V.

Brian DeHaan, Oregon Official (Senior
Assistant Attorney General); Diane S. Sykes,
Diane S. Sykes Attorney at Law, P.C.
(Oregon Bar Outside Counsel); Oregon State
Bar; Oregon Judicial Department (Parent
agency for Oregon State Bar); Honorable
Christopher A Ramras (Oregon Circuit Court
Judge); ELLEN F. ROSENBLUM, Oregon's
17th Attorney General; Jon W. Monson,
Oregon Circuit Court Judge Pro Tempore;
and Thomas M. Christ, Oregon Court Judge
Pro Tempore;

          DEFENDANTS,

_____/

CASE NO: _____

**VERIFIED**
**CIVIL RIGHTS COMPLAINT**:
42 U.S.C. § 1983: FOURTH, FIFTH and
FOURTEENTH AMENDMENTS;
COMMON LAW AND
CONSTITUTIONAL TORT CLAIMS; and
DECLARATORY AND INJUNCTIVE
RELIEF

Plaintiffs, Divya Khullar Esq., (hereinafter "DK, *pro se*, and Khullar P.A., through its undersigned counsel, Divya Khullar P.A., (hereinafter P.A.) (hereinafter collectively referred to as "Plaintiffs") hereby file this Complaint against the above-named Defendants and as grounds, therefore, states as follows:

## INTRODUCTION

1.      This is an action founded in the Constitution of the United States of America: Any citizen of these United States of America can and shall legitimately expect a State employee, commissioned by the laws of these United States, to act with due and absolute respect of individual rights. If he/she deliberately fails to respect those rights and causes injury to any citizen, irrespective of their race, creed, color, ethnicity, origin, religion, or sex, he is not acting

within the protection of his commission. In addition, there is no adequate rationale-in history or policy-for altogether exempting judicial officers from liability under Section 1983, especially when the conduct is done with reckless disregard to one's individual rights.

2.     DK, an American citizen and a Florida licensed attorney, and the P.A. seek redress for the denial of their right to procedural and substantive due process. The gravamen of this complaint against the DOJ, DeHaan, and Defendant Judges arises out of a lawsuit the DOJ filed against Plaintiffs in Oregon State Court; STATE OF OREGON ex rel. ELLEN F. ROSENBLUM, Attorney General for the State of Oregon v. KHULLAR P.A. et. al., **IN THE CIRCUIT COURT OF STATE OF OREGON, FOR THE COUNTY OF MULTNOMAH CIVIL DIVISION.** CASE NO.:17CV50277 (hereinafter the "DOJ case").

3.     As is elaborated below, the conduct of the DOJ from the very beginning - even before the filing of the initial complaint in the DOJ case –demonstrates succinctly that they; the DOJ, the DOJ's prosecuting attorney, DeHaan, and OJUD have been intent, individually and collectively, on denying Plaintiffs their procedural and substantive due process rights protected under the 5th and 14th Amendment to the United States Constitution.

4.     The DOJ and OJUD have; intentionally ignored and not enforced procedural requirements relating to obligations imposed on the DOJ and DeHaan; disregarded facts in the case to further their intentions; ignored the evidence and the law of Oregon in furtherance of their intentions; and sought and had relief granted with the specific intent of compounding and continuing their efforts to deny Plaintiff's procedural and substantive due process rights afforded under the United States Constitution. This case presents a fine example of why diversity jurisdiction exists and why this case should have been removed by Plaintiffs' Oregon counsel - who was ultimately requested by the undersigned to withdraw as counsel on October 5, 2018.

5. Whether the motivation of the DOJ and the OJUD to deprive Plaintiffs of their rights was and is motivated by DK's ethnic background, DK's skin color, DK's religion, DK's accent, or some other reason is unknown. However, there is motivation and there has been deprivation. Therefore, there must be judicial vindication. The DOJ and the OUJD have, to date, deprived Plaintiffs of their constitutional rights in at least nine (9) areas at different times since the filing of the DOJ case. The record establishes, unequivocally, that no redress will be afforded to DK by the OJUD; that Plaintiffs have suffered irreparably; and that the Federal Court sitting in Florida is the only protection that Plaintiffs have at the present time. The OSB, Sykes and the OJUD have also deprived Plaintiffs of procedural and substantive due process rights. The OSB filed a case in The Circuit Court of the State of Oregon for the County of Multnomah, Case # 18CV31833; Oregon State Bar, a public Corporation of the State of Oregon v. Khullar P.A., Divya Khullar Esq. et.al. (hereinafter "OSB case").

7. At the time the OSB filed the complaint, Plaintiffs herein were being represented by Garrett Garfield Esq. in the DOJ case.

## JURISDICTION, PARTIES, AND VENUE

8. This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

9. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of Federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

10. Supplemental Jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

11.     This is an action for damages in excess of the minimum jurisdictional requirements of this Court, exclusive of interest, attorney's fees, and costs, and is otherwise within the jurisdiction of this Court.

12.     At all times material hereto Plaintiff, Divya Khullar Esq. (hereinafter "DK"), was and is a resident of Broward County, Florida and is otherwise sui juris.

13.     At all times material hereto Plaintiff, Khullar P.A., (hereinafter, the "P.A."), was and is a professional association registered and doing  business in Broward, County, Florida

14.     At all times material hereto Defendant, ELLEN F.ROSENBLUM, Oregon's 17th Attorney General (hereinafter "DOJ"), is part of the Executive Branch of the State of Oregon which heads the State's Department of Justice.

15.     At all times material hereto Defendant, OREGON STATE BAR (hereinafter "OSB"), is a public Corporation of the State of Oregon.

16.     At all times material hereto Defendant, Diane Sykes, Attorney at Law, P.C., (hereinafter "Sykes"), was prosecuting claims against Plaintiffs on behalf of and at the direction of OSB.

17.     At all times material hereto Defendant Brian DeHaan (hereinafter "DeHaan"), was prosecuting claims against Plaintiffs on behalf of and at the direction of the DOJ.

18.     At all times material hereto Defendant, Oregon Judicial Department (hereinafter "OJUD"), was adjudicating issues raised by Plaintiffs, the DOJ, the OSB, and Sykes as described in this complaint.

19. At all times material hereto Defendant, Honorable Christopher A. Ramras, as an employee of the OJUD, was adjudicating issues raised by Plaintiffs, the DOJ, and DeHaan as described in this complaint.

20.  . At all times material hereto Defendant, Jon W. Monson, as an agent or employee of the OJUD, was adjudicating issues raised by Plaintiffs, the DOJ, and DeHaan as described in this complaint.

21.  At all times material hereto Defendant, Thomas M. Christ, as an employee or agent of the OJUD, was adjudicating issues raised by Plaintiffs, the DOJ, and DeHaan as described in this complaint.

22.  The DOJ and DeHaan will collectively be referred to in this complaint as the "DOJ"; the judges and the OJUD will be collectively referred to as the "OJUD" and Sykes and the OSB will collectively be referred to as the "OSB".

23.  The venue is proper in the Southern District of Florida, Broward County as per the *effects* of Defendants actions 1

## PRELIMINARY STATEMENT OF LAW

24.  The U.S. Supreme Court has held that judges of courts of general jurisdiction were not civilly liable for their judicial acts, "unless, perhaps where the acts, in excess of jurisdiction, are done maliciously or corruptly." 74 U.S. (7 Wall.) 523 at 536 (1868). See also, Indiana: State ex rel. Conley v. Flinn, 3 BlackF. 72 (1832); State ex rel. Robinson v. Littlefield, 4 Blackf. 129 (1835). Iowa: Wasson v. Mitchell, 18 Iowa 153 (1044). Kentucky: Revill v. Pettit, 60 Ky. 314 (1860); Gregory v. Brown, 4 Bibb 28 (1815). Maryland: Friend v. Hamill, 34 Md. 479 (1862). South Carolina: State ex Yet. Tavel v. Jesey, 4Strobh. 304 (1850); Macon v. Cook, 2 N. & McC. 168 (1819). Tennessee: Cope v. Ramsey, 49 Tenn. 197 (1870); Hoggatt v. Bigley, 25 Tenn. 236 (1845).

---

[1] Brief for the United States at 16-17, United States v. Rodriguez-Moreno, 526 U.S. 275 (1999). (Government arguing venue proper in any district in which the crime's *effects* are felt.). *See also* Armour Packing Co. v. United States *209 U.S. 56 (1908) and United States v. Kirk Tang Yuk, 885 F.3d 57, 70 (2d Cir. 2018) (quoting United States v. Lange, 834, F.3d 58, 71 (2d Cir. 2016)).*

25.     The Supreme Court itself has recognized that a citizen's rights may be seriously violated even if he is not ultimately convicted, which would seem to recognize that appealability simply is not sufficient protection. *Monroe v. Pape*, 365 US. 167 (1961).

26.     An individual or group facing litigation which is intended only to harass will take little comfort indeed from his "right" to appeal. Whether or not the appeal vindicates the abused party, the inconvenience and expense of litigation remains. Moreover, if the judicial officer also serves as the "finder of fact," he may effectively preclude a successful appeal. The Federal Injunction as a Remedy for Unconstitutional Police Conduct, 78 YALE L.J. 143 (1968) quoting remarks CONG. GLOBE, 42nd Cong., 1st Sess. 185 (App.).

27.     "The courts should be wary of any argument based on the fear that subjecting government officers to the nuisance of litigation and the uncertainties of its outcome may put an undue burden on the conduct of public business. Such a burden is hardly one peculiar to public officers... [b]ut the way to minimizing the burdens of litigation does not generally lie through the abolition of a right of redress for an admitted wrong." Barr v. Matteo, 360 U.S. 564, 588.89 (1959) (Brennan, J., dissenting).2

## FACTUAL ALLEGATIONS

*The DOJ Case*

### *Deprivation #1(composite of violations)*

*28.*     The DOJ initiated its illegal conduct before naming DK as a party in the DOJ case when it filed the First Amended Complaint on March 26, 2018. The DOJ, before bringing in DK had to comply with *ORS 646.632.* Compliance with this statute was

---

² Justice Brennan voted with the majority in Pierson, apparently not on this ground. Barr was a defamation case in which the defendant pleaded privilege. The defense of official privilege in defamation actions is generally considered to stand on the same theoretical footing as the defense of immunity to tort actions generally. W. Prosser, The Law of Torts 607(2d ed. 1955).

mandatory because the DOJ in its First Amended Complaint seeks not only damages but also *injunctive relief. See First Amended Complaint attached hereto as Exhibit "A" and incorporated herein.*

29.    The beginning of the deprivation by the DOJ is evident, in light of the relevant facts, by even a cursory reading of *ORS 646.632* which sets out conditions precedent to filing claims under Oregon's Unlawful Trade Practices Act. These are "due process" conditions on their face. Emphasis to certain provisions has been added by Plaintiffs as they are the only relevant ones to the underlying DOJ action and the deprivation of Plaintiffs' due process rights.

> **646.632 Enjoining unlawful trade practices; assurance of voluntary compliance; attorney fees.**
> (1) Except as provided in ORS 646.633, a prosecuting attorney who has probable cause to believe that a person is engaging in, has engaged in, or is about to engage in an unlawful trade practice may bring suit in the name of the State of Oregon in the appropriate court to restrain such person from engaging in the alleged unlawful trade practice.
> *(2) Except as provided in subsections (5) and (6) of this section, before filing a suit under subsection (1) of this section, the prosecuting attorney shall in writing notify the person charged of the alleged unlawful trade practice and the relief to be sought. Such notice shall be served in the manner set forth in ORS 646.622 for the service of investigative demands. The person charged thereupon shall have 10 days within which to execute and deliver to the prosecuting attorney an assurance of voluntary compliance. Such assurance shall set forth what actions if any; the person charged intends to take with respect to the alleged unlawful trade practice. The assurance of voluntary compliance shall not be considered an admission of a violation for any purpose. If the prosecuting attorney is satisfied with the assurance of voluntary compliance, it may be submitted to an appropriate court for approval and if approved shall thereafter be filed with the clerk of the court. If an approved assurance of voluntary compliance provides for the payment of an amount of money, as restitution or otherwise, and if the amount is not paid within 90 days of the date the court approves the assurance, or, if the assurance of voluntary compliance requires periodic*

*payments and if any periodic payment is not paid within 30 days of the date specified in the assurance of voluntary compliance for any periodic payment, then the prosecuting attorney may submit that portion of the assurance of voluntary compliance which provides for the payment of money to the court with a certificate stating the unpaid balance in a form which fully complies with the requirements of ORS 18.038 and 18.042. Upon submission of an assurance of voluntary compliance under this subsection, the court shall sign the assurance of voluntary compliance and it shall be entered in the register of the court and the clerk of the court shall note in the register that it creates a lien. The assurance of voluntary compliance shall thereupon constitute a judgment in favor of the State of Oregon and may be enforced as provided in ORS chapter 18. The notice of the prosecuting attorney under this subsection shall not be deemed a public record until the expiration of 10 days from the service of the notice.*

(3) The prosecuting attorney may reject as unsatisfactory any assurance:

(a) Which does not contain a promise to make restitution in specific amounts or through arbitration for persons who suffered any ascertainable loss of money or property as a result of the alleged unlawful trade practice; or

(b) Which does not contain any provision, including but not limited to the keeping of records, which the prosecuting attorney reasonably believes to be necessary to ensure the continued cessation of the alleged unlawful trade practice, if such provision was included in a proposed assurance attached to the notice served pursuant to this section.

(4) Violation of any of the terms of an assurance of voluntary compliance which has been approved by and filed with the court shall constitute a contempt of court.

(5) The prosecuting attorney need not serve notice pursuant to subsection (2) of this section before filing a suit if, within two years of the filing of such suit, the person charged with the alleged unfair trade practice submitted to any prosecuting attorney an assurance of voluntary compliance which was accepted by and filed with an appropriate court. The prosecuting attorney shall in such case serve notice on the defendant in the manner set forth in ORS 646.622 for the service of investigative demands, on the 10th or earlier day previous to the filing of the suit.

(*6) If the prosecuting attorney alleges that the prosecuting attorney has reason to believe that the delay caused by complying with the provisions of subsection (2) or (5) of this section would cause immediate harm to the public health, safety or welfare, the prosecuting attorney may immediately institute a suit under*

*subsection (1) of this section*.

(7) A temporary restraining order may be granted without prior notice to the person if the court finds there is a threat of immediate harm to the public health, safety or welfare. Such a temporary restraining order shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the person restrained consents that it may be extended for a longer period.

(8) The court may award reasonable attorney fees to the prevailing party in an action under this section. If the defendant prevails in such suit and the court finds that the defendant had in good faith submitted to the prosecuting attorney a satisfactory assurance of voluntary compliance prior to the institution of the suit or that the prosecuting attorney, in a suit brought under subsections (5) and (6) of this section, did not have reasonable grounds to proceed under those subsections, the court shall award reasonable attorney fees at trial and on appeal to the defendant. [1971 c.744 §11; 1975 c.437 §3; 1981 c.897 §77; 1989 c.745 §1; 1995 c.618 §97; 2003 c.576 §215; 2010 c.94 §4].

30.     Nothing about the foregoing provisions is ambiguous and neither case law nor fanciful argument is capable of casting some cloud as to what is required. The fact is that the DOJ must have either complied with section (2) or have made the appropriate allegations in the complaint at issue in the DOJ case.

31.     The initial complaint filed on November 17, 2017; by the DOJ in the DOJ action did not name D.K. as a defendant. *See initial complaint attached as Exhibit "B".*

32.     Before the filing of the initial complaint, in the DOJ case against the P.A., there was no *646.632(2)* compliance relating either to the P.A. or D.K. Instead, the DOJ alleged therein what was required pursuant to *ORS.646.632(6).,* The DOJ filed an Ex Parte Motion for Temporary Restraining Order on November 17, 2017 (*attached as Exhibit "C")* against the defendants in the DOJ case, including the P.A. but not DK. Defendant OJD entered a restraining order also on November 17, 2017. *See Order attached as Exhibit "D".* Thus, at this point, DK individually was still not involved at all in the DOJ proceedings.

33.     On January 12, 2018, the DOJ advised the defendants in the DOJ case that it would be releasing the hearing on the TRO and "voluntarily" withdrawing the Order. The DOJ further advised that it would be probably filing a preliminary injunction – rather than a TRO – after they filed an Amended Complaint.

34.     On January 17, 2018, the DOJ and DeHaan served an Ex-Parte Motion to Release Hearing Date and Voluntary Withdrawal of TRO, without prejudice.

35.     On January 18, 2018, the DOJ filed the Ex-Parte Motion to Release Hearing Date and Voluntary Withdrawal of TRO, without prejudice.

36.     On January 18, 2018, the OJUD entered an Order granting the Ex-Parte Motion to Release Hearing Date and Voluntary Withdrawal of TRO, without prejudice.

37.     On January 18, 2018, the DOJ and DeHaan filed the First Amended Complaint *(Exhibit "A")* without compliance with *ORS 646.632(2)* and without the obligatory allegations contained in *ORS 646.632(6).* Moreover, the First Amended Complaint added DK this time as a named party.

*38.*     Thus, at this point, the undeniable facts in the DOJ action are that; the initial complaint against the P.A. was withdrawn (a nullity); an Order on a TRO against the P.A. was also withdrawn (a nullity); and a First Amended Complaint was filed without compliance with *ORS 646.632(2)* beforehand and absent allegations therein as mandated by *646.632(6).*

39.     On March 26, 2018, Plaintiffs filed an Answer and Affirmative Defenses to the First Amended Complaint. *See Answer and Affirmative Defenses attached as Exhibit "E".* Plaintiffs therein appropriately alleged as their First Affirmative Defense that the DOJ did not comply with *646.632(2), and (6).*

*40.*     The DOJ, to date, has never sought leave to amend the First Amended Complaint

or even reply to the affirmative defense. Moreover, the DOJ, when presented with further opportunity to demonstrate compliance to the OJUD and Plaintiffs herein, merely rested on its knowledge that the OJUD would not obligate it in any respect. The OJUD, as explained below, ratified the DOJ's outright contempt for the law which otherwise would have afforded Plaintiffs due process.

41.        The further opportunity referenced above was very clearly afforded the DOJ when Plaintiffs herein, defendants below, filed a Motion for Judgment on the Pleadings in the DOJ case. *See Motion for Judgment on the Pleadings attached hereto as Exhibit "F".* Nevertheless, and undeterred by the facts and law, the DOJ knew that any meaningful response was not necessary. In fact, the response filed by the DOJ was expectedly unintelligible. The DOJ responded stating:

42.        "Mr. Khullar [DK] asserts two arguments in his motion for judgment on the pleadings: (1) that the State's complaint should be dismissed because the State, according to Mr. Khullar, did not comply with the 10-day notice requirement set out in UTPA section 646.632(2), and (2) because the State, according to Mr. Khullar, failed to allege in its complaint that there was a basis for non-compliance. Neither argument has merit, either factually or legally….."Mr. Khullar's first argument—that the State improperly failed to comply with subsection(2)—should be rejected because it is a factual argument, to be determined if at all at trial, and is not raised properly on a motion for judgment on the pleadings. In any event, in this action, the same day the State filed its complaint against defendants Multnomah County Circuit Judge Jerome Labarre entered a restraining order against defendants finding, as required per subsection(7), that the restraining order was supported by "a threat of immediate harm to the public health, safety, and welfare." It is, therefore, the law of the case, per Judge LaBarre's order, that conditions set out in

subsection (5), excusing compliance with subsection (2)'s 10-day notice requirement, were satisfied."

43.	The foregoing response is disingenuous - both factually and legally. Moreover, the DOJ's reference to a withdrawn TRO order and a withdrawn initial complaint is equally disingenuous. The law of the case can only be based on the pleadings of the case – not pleadings withdrawn which are totally meaningless.3 Nevertheless, the OJUD, compliant with the DOJ's attempt to deprive Plaintiffs of their constitutional rights, came up with an equally incredible and patently biased ruling. More specifically, the OJUD, through one of more than four (4) judges assigned to this case, denied the Motion for Judgment on the Pleadings stating in relevant part on the record that he "believes" the DOJ has **alleged** *that the delay caused by complying with the provisions of subsection (2) would cause immediate harm to the public health, safety or welfare – making reference to the initial, and withdrawn, complaint that did not even name DK as a party. The written Order states that he denied the motion because "The context of the First Amended Complaint alleges that delay would have caused imminent harm to the public welfare, as required by ORS sec. 646.632(6); and The requisite allegations were present in the original complaint when there "suit" was "instituted "as required by ORS 646.632(6)." This finding is nothing more than a gross abuse of discretion for the multiple factual reasons set forth in this complaint.*

44.	The DOJ further responded to the Motion for Judgment on the Pleadings stating that: "Mr. Khullar's second argument—that the State improperly failed to allege that delay would threaten the public welfare, as supposedly required by subsection (6)—is simply factually incorrect. When the State assessed the situation in November 2017 and determined to forego the 10-day notice and to immediately file its complaint and seek a restraining order, its complaint

---

3 With rare exceptions not presented in the DOJ case.

contained the following allegation: In light of the pending workshop at the Beaverton Courtyard Marriott on November 18 and 19, 2017, delay caused by complying with the provisions of ORS 646.632(2) and (5) would cause immediate harm to the public welfare. As the case had already been filed and the matter joined, *it was needless to repeat the allegation in the First Amended Complaint, in particular given that Judge LaBarre's finding that a risk to public welfare existed was already the law of the case.* But in any event, even if this were not the case, the allegations of the First Amended Complaint allege a scheme to defraud Oregon residents that, on its face, clearly poses such a risk. Accordingly, there is no pleading failure under subsection (6). Finally, even were the Court to agree that the State has improperly failed to allege risk to public welfare as Mr. Khullar argues, evidence of such risk will be presented at trial, and any pleading deficiency may then be cured by seeking leave after trial to conform the pleading to the evidence." Again, an argument without a factual and legal basis.

### *Deprivation # 2 (composite of violations)*

45.     Plaintiffs' due process rights were violated by the DOJ and DeHaan, having filed an untimely Motion for Partial Summary Judgment against Plaintiffs herein, the OJD having refused to entertain Plaintiff's Motion to Strike the DOJ's Motion for Partial Summary Judgment on June 3, 2019, when it was duly scheduled for hearing; by the OJD re-scheduling the hearing for June 5, 2019 at the time of the Summary Judgment hearing, and the OJD granting the DOJ's Motion for Partial Summary Judgment.

46.     Plaintiffs' Motion to Strike was filed on April 30, 2019, pursuant to Oregon Rule of Civil Procedure 21 E which states:

> **ORCP 21 E, Motion to strike.** "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 10 days after the service of the pleading upon such party or upon the

court's own initiative at any time, the court may order stricken: (1) any sham, frivolous, or irrelevant pleading or defense or any ….."

47.     Plaintiffs asserted that the Motion for Summary Judgment must be stricken as a sham and frivolous pleading as Plaintiff knowingly and intentionally filed its motion in violation of the specific requirements of Oregon Rule of Civil Procedure 47 which governs the filing of motions for summary judgments generally. Specifically, ORCP 47 C Motion and proceedings thereon provide that "any Motion for Summary Judgment **must be served and filed at least 60 days before the date set for trial**."

48.     The trial of this case is set for June 17, 2019. Therefore, any summary judgment motion had a cutoff date of April 17, 2019. Thus, the DOJ's filing of its Motion for Partial Summary Judgment on April 29, 2019, was in direct violation of the clear requirements of the foregoing rule.

49.     The DOJ's wrongful filing of the Motion is even more contemptuous when considering the fact that DK, upon being advised of the DOJ's intent to file same, even brought the foregoing provision to DeHaan's attention. Nevertheless, DeHaan filed the motion anyway – apparently not concerned about compliance with the rules. Not deterred, the DOJ and the OJUD proceeded as promised to the Summary Judgment hearing and, of course, the 4th or 5th Judge or Judge Pro Tempore who has been involved in the DOJ action took every opportunity to further deprive Plaintiffs of their due process rights. The Judge Pro Tempore; ruled that a Notice of Interlocutory Appeal that was filed on June 3, 3019, relating to June 3, 2019, hearing was improper; ruled, therefore, the proceedings have not stayed; threatened DK with sanctions for continuing to represent his P.A. (although the other Judge Pro Tempore who heard Plaintiff's Motion For Summary Judgment never actually entered an Order to that effect); found that the

DOJ demonstrated good cause for filing its Motion for Summary Judgment late; took judicial notice of other proceedings without the following procedure; and made other rulings which are patently biased. *See the proposed order attached hereto as Exhibit "G".*

### *Deprivation # 3 (composite of violations)*

50.     The sheer contempt of this courts rules and procedures does not end here, to step it up to another level of disregard of Oregon's laws, DeHaan unilaterally scheduled DK's deposition in Oregon.

51.     It is the customary practice to confer regarding the date, time and place for deposition prior to issuing the deposition notice. Moreover, except for good cause, counsel will not serve a notice of deposition until they have made a good faith effort to confer with all counsel regarding a mutually convenient date, time, and place for the deposition. *Oregon Local Rule 30-2.*

52.     DOJ prosecutor DeHaan unilaterally scheduled a deposition of DK in Oregon on May 20, 2019, less than four (4) weeks prior to trial. The notice of deposition should have been stricken and a protection order entered for several reasons:

a) Oregon Rules of Civil Procedure and Local Rules require that the parties confer before filing or scheduling any matter. *See, Conferring and Good Faith Efforts to Confer (UTCR 5.010.* Judges have held that "to confer" means to talk in person or on the phone. Generally, sending a text message or email is not considered to be conferring. DK was neither contacted by e-mail or telephone for the scheduling of this deposition before it was noticed on April 26, 2019.

b) DK's deposition was scheduled previously and was canceled by DeHaan at the last minute;

c)  The calendar call in the DOJ case is scheduled for June 14, 2019, and Trial is scheduled to commence on June 17, 2019;

d)  DK resides and works in South Florida;

e)  The DOJ knew that Khullar was going to be in Portland Oregon on May 2, 2019, and on May 3, 2019, and made no attempt to schedule the deposition in Portland on either of those two dates;

f)  Federal law favors the convenience of the individual defendant with an initial presumption that a deposition should occur at the place of the defendant's residence or principal place of business. *Turner v. Prudential Ins. Co.*, 119 F.R.D. 381, 383 (M.D.N.C.1988);

g)  As the Motion for Summary Judgment cutoff is 60 days prior to trial, so should the discovery cutoff period.

**Rule 39 C of the Oregon Rules of Civil Procedure provides:**

C (1) **Relief available; grounds for limitation.** On motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: that the discovery not be had; that the discovery may be had only on specified terms and conditions, including a designation of the time or place; that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; that discovery be conducted with no one present except persons designated by the court; that a deposition after being sealed be opened only by order of the court; that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or that to prevent hardship the party requesting discovery pay to the other party reasonable expenses incurred in attending the deposition or otherwise responding to the

request for discovery.

53.	Plaintiffs' due process rights were further violated when the OJUD on June 3, 2019, compelled DK to sit for a deposition that same afternoon/evening in Oregon without prior notice to DK and without prior notice to the other named defendants. This Order is tantamount to a penalty for Plaintiffs' having followed Oregon's rules for seeking protective orders. The DOJ and the OJUD knew at all times material that DK's return flight to Florida was at 4:30 p.m. that same day and that any change in flight plans would not only be an additional expense to Plaintiffs but also require a change of DK's weekly work schedule and obligations back at his office in Broward County, Florida.

### *Deprivation # 4*

54.	Plaintiffs' due process rights were violated by the OJUD when the OJUD and the DOJ proceeded to hear on June 5, 2019 the DOJ's Motion for Partial Summary Judgment when the OJUD and DOJ were advised beforehand that a Notice of Appeal was filed on June 3, 2019, appealing the June 3, 2019 rulings of the Court, which effectively stayed the proceedings. To be sure, DeHaan wrote in an e-mail on June 5, 2019 to the Judge Pro Tempore: "Your Honor: For reasons I will be happy to discuss at this afternoon's hearing, the State does not understand there to be any stay of proceedings currently in place, nor do we think there is any validly-filed appeal. As such, and for the avoidance of doubt, I am writing to let Your Honor know that I plan to appear this afternoon to argue the motions that are set for hearing." The Judge Pro Tempore responded to DeHaan: "We can discuss this matter at the hearing this afternoon, which will proceed as planned. Tom Christ Judge Pro Tempore."

55.	Oregon law is clear. ORS **19.235 Jurisdiction for determining whether the decision is appealable** provides:

(1) Notwithstanding ORS 19.270, if any party or the trial court on its own motion, on receiving actual notice of the filing of the notice of appeal, raises the issue whether the decision being appealed is appealable, the trial court shall have jurisdiction to make a summary determination, with or without a hearing, whether the decision is appealable. As used in this section, "decision" means any trial court ruling, either oral or written.

(2) If the trial court determines that the decision is not appealable, the trial court, in its discretion, may proceed through the entry of the judgment or stay proceedings pending an appellate court determination of the existence of an appealable decision. The trial court may refer to the question of the existence of an appealable decision to the court to which the appeal is taken. Neither an order by the trial court to proceed through the entry of judgment, an order by the trial court to stay proceedings pending an appellate court determination, nor a trial court referral of the question of the existence of an appealable decision to the appellate court is appealable. However, on the motion of any party or on its own motion the appellate court may stay proceedings in the trial court or stay any order or judgment entered by the trial court pending a final determination of appealability.

(3) When a party by motion, the trial court by referral or the appellate court on its own motion raises the issue whether the decision is appealable, the appellate court may make a summary determination of the appealability of the decision. A summary determination of the appealability of a decision under this subsection is subject to review by the Supreme Court as provided in ORS 2.520 except that the petition for review shall be served and filed within 14 days after the date of the court's determination. Either the Court of Appeals or the Supreme Court may shorten the time period within which the petition for review shall be filed. A petition for review of a determination under this subsection shall not be treated as a request for reconsideration by the Court of Appeals. The Supreme Court shall expedite its review of the Court of Appeals' summary determination under this subsection.

(4)(a) The trial court's authority to proceed with a case under subsection (2) of this section shall end when the appellate court has made an express determination that an appeal has been taken from an appealable order or judgment, all means for obtaining review of that determination under subsection (3) of this section have been exhausted, and the State Court Administrator at the direction of the court has mailed copies of the final appellate court determination to the trial court and the parties; otherwise, the trial court's jurisdiction shall continue.

(b) No action by the trial court taken pursuant to subsections (1) and (2) of this section, except for entry of judgment, shall be void

solely because an appellate court later determines that a notice of appeal was filed from an appealable decision. [Formerly 19.034]

56.     The only interpretation that can be given to the foregoing is that once the Notice of Appeal is filed the proceedings are stayed until either the trial court addresses the appealability of the decision –whether on its motion or after motion filed by a party. Of course, the Pro tempore Judge granted the DOJ's Motion for Partial Summary Judgment, based in no small part on the OSB's and Syke's illegal conduct in the OSB case.

### Deprivation # 5

57.     Additionally, the DOJ has on multiple occasions engaged in heart-warming ex-parte communication with the Oregon trial judge's office despite the undersigned's insistence that it cease forthwith.

### Deprivation # 6

58.     The OJUD has not permitted sufficient time for the undersigned to obtain an attorney to represent the P.A. The calendar call is scheduled for Junev14, 2019 and the trial is scheduled for June 17, 2019. The complaint at issue is the First Amended Complaint which was not filed until January 18, 2018, and the Answer and Affirmative Defenses were not filed until March 26, 2018. DK was not a party to these proceedings before then. This cause has only been postponed on one prior occasion per the agreement of the parties. The trial was previously scheduled to commence in February of this year. Of course, the Judge Pro Tempore denied Plaintiff's request for appointment of counsel or in the alternative a postponement of the trial for reasons in no small part based on the need for counsel.

59.     Recently, and on May 2, 2019, DK appeared in court to argue Plaintiffs' own Motion for Summary Judgment filed in the DOJ case. The DOJ asserted for the first time on May 2, 2019 that DK could not represent his P.A. DK was not permitted by the Judge Pro Tempore to

argue the Motion for Summary Judgment on behalf of his P.A. Thus, following this ruling, the P.A., only since May 2, 2019, has been arguably unrepresented in these proceedings.

60.     Although Plaintiffs disagrees with the ruling of the Judge Pro Tempore – as it relates to the representation issue - it arguably became the law of the case at this point.

61.     Since May 3, 2019, DK has been tirelessly seeking representation for his P.A. Unfortunately, due to the complexity of the matter and the fact that the Attorney General is the Plaintiff below; DK has been unable to find any representation. Up to thirty (30) attorneys have refused representation.

62.     Even if DK were to prevail personally, without representation of the P.A., the P.A. will default with a corresponding judgment against it for the $400,000.00 in damages, exclusive of interest, costs, and fees, sought by the DOJ. It is safe to say that any judgment against the P.A. may as well be a judgment against DK.

63.     DK has contacted numerous attorneys in and around the Portland area who have responded as follows:

a.  I am in the trial during the time your trial is scheduled;

b.  I am unable to represent you at this point because there is not enough time to prepare;

c.  I already have too many files;

d.  Getting involved at this point will subject me and my firm to malpractice;

e.  If you give me a six-figure retainer, I may be able to find somebody to represent you;

f.  I will be away on vacation;

g.  I just can't drop everything I am doing to prepare for such a complicated trial;

and

h. Many other reasons.

64.     DK even tried to retain again his former attorney who previously was compelled to withdraw because of conflicts between the defendants he was representing.

65.     Under the circumstances, DK must have an attorney represent his P.A. DK sought the assistance of the Oregon trial court by virtue of his Motion for Court Appointed Counsel and Motion to Postpone the Trial which was denied unjustifiably.

### Deprivation # 7

66.     One such attorney who DK contacted for possible representation was Sean J. Riddell from Portland Oregon. DK discussed the DOJ action with Mr. Riddell who in turn contacted, apparently, DeHaan. DeHaan, instead of discouraging a conversation with Mr. Riddell, apparently spoke freely with him about the case and thus, was intentionally interfering with D.K.'s attempt to obtain counsel for the P.A. DeHaan, on June 3, 2019, sarcastically told DK that he knew about DK's conversation with Mr. Riddell.

### Deprivation # 8

67.     On June 4, 2019, Plaintiff received a significant amount of discovery, attached to a cover letter from the DOJ that it apparently plans to introduce at the trial of this cause which is scheduled to commence on June 17, 2019. This discovery contains documents never produced in this case; names of individuals never identified before and raise other evidentiary issues that Plaintiffs are unable to address while the proceedings have stayed.

### Deprivation # 9

68.     The DOJ's intent on continuing to violate Plaintiff's due process rights is reiterated in its Motion to Permit Remote Location Testimony to which Plaintiffs filed a

response. The DOJ's Motion was granted.

69.     The DOJ's motion wholly failed to plead, much less analyze and demonstrate all factors set forth in *ORS 45.400* which may or may not be favorable to the State of Oregon or, as importantly, prejudicial to Plaintiffs. The Court is obligated to consider all such factors in such a motion. As more particularly described below, the DOJ's motion sought to disregard, abolish, and smirk Plaintiff's (the accused) fundamental right to confront unidentified accusers (the alleged victims in the DOJ case). The DOJ's entire motion was, in fact, predicated on nothing more than liberal newspaper propaganda.

70.     First of all, let us begin with the introductory allegations on page 1 of the State's Motion *(See Motion attached as Exhibit "H- Motion to Permit Remote Location Testimony),* underneath the section "Points and Authorities." Even though Judge Pro Tempore Jon Monson denied Khullar's Motion for Summary Judgment on May 2, 2019, Brian DeHaan admitted at the summary judgment hearing that he had NO evidence to directly link DK to any of the allegations of the pool of victims (in the words of the DOJ). Mr. DeHaan's entire summary judgment defense was predicated on an expert that he intends to call who is supposedly going to provide competent evidence of every element of the causes of action asserted against Plaintiffs. *See ORCP 47 E.*

71.     The problem with the DOJ's argument is that expert witnesses must have a factual basis for their testimony and an "expert opinion" in this case would necessarily be based on what was represented to the "pool of victims" by the Defendants below (an attorney (DK), an interpreter (Soto), a non-attorney spokesperson (Rosario), and an interviewer (Pena). There has to be a proper predicate. What the DOJ has produced so far from the "pool of victims" (again, in the words of the DOJ) are statements from four (4) individuals which are nothing more than

hearsay, double hearsay and certainly nothing that falls within any exception to the hearsay rule. Judge Pro Tempore Jon Monson did not wish to address the record evidence at the summary judgment hearing.

72.   The DOJ's Motion to Permit Remote Location testimony was based, in no small part on the DOJ's desire to frustrate Plaintiffs effective use of the aforementioned statements/declarations on cross-examination to unravel the frivolous allegations that have been made against DK and his P.A. It is equally apparent that the DOJ' intent was to prevent DK from effectively cross-examining unidentified witnesses who apparently are the basis of the foundational predicate certain opinion testimony as "declared" by Mr. DeHaan in his declaration filed in opposition to Khullar's Motion for Summary Judgment. *See Declaration attached as Exhibit "I".*

73.     The only four (4) declarations produced in these proceedings were those of 1) Juan Jose Hernandez (he apparently attended an event on 12/18/2017); 2) Blanca Flor Doroteo Mora (apparently attended an event on 9/23/17); 3) Hilda Becerra (she is unable to identify what day she attended an event); and 4) Maria Del Refugio Vargas Ramos (apparently attended an event on October 14, 2017). *See all four statements attached as Composite Exhibit "J".* Each one of these declarations contains inadmissible statements. Without going into the merits, reliability, admissibility, or any of that … it is important to note that these individuals were apparently motivated to attend the events after having seen an advertising segment on local television. The video shows Defendant Rosario talking, while a banner below reads; "Non-attorney Spokesperson" (in Spanish). In addition, for purposes of this motion and also this case, Rosario's business clearly identified him as a marketing person and all attendees, prior to an interview, were compelled to sign a declaration, which was filed as an exhibit to Plaintiffs'

Motion for Summary Judgment acknowledging they were/are speaking with a non-attorney.

74.      The foregoing is just a small example of the cross-examination process that Khullar will undertake with these individuals.

75.      There are further areas of cross-examination that will also be frustrated if the "pool of victims" is sheltered by either a T.V. monitor or a telephone. For example, the declarations reflect discussions with Emmanuel Rosario (hearsay); discussions with Karla Soto (hearsay); discussions with Carolina Nunez Lopez (hearsay); discussions with Maria Elena Morales Jeronimo (hearsay); discussions with Barbara Ghio (hearsay); discussions with Kurt Muntz (hearsay); discussions with unidentified individuals (hearsay); and discussions with unidentified individuals at a Catholic charity (hearsay). Most importantly, admissible or not, none of these declarations mentioned any facts or allegation specific to Khullar. And if any defendants are present in the courtroom at trial, I would venture to say that a line of questioning about recognizing them would also be fair.

76.      As an aside, the Court, In *State of Oregon v. Quintero* et. al. 823 P.2d 981 (Or. App., 1991) addressed admissions against interest by a co-defendant and recognized that although the out of court statement is admissible against that co-defendant, it was inadmissible against the others. *Id.*

77.      With the foregoing factual background in place, the rationale for the DOJ filing its Motion to Permit Location Testimony was apparent and based on two incredible reasons, generally: 1) Because a liberal and political press is indicating that ICE specifically targets undocumented individuals for arrests based on their court appearances and these press reports have caused fear and trepidation among the victims of the fraud alleged in this case ………; and 2) The DOJ's desire to weaken, in any way it can, the formidable defenses Khullar has/had, to

the frivolous allegations made against him by the DOJ.

78. The first argument made by the DOJ is based on "fake news", and it is beyond rationale comprehension how the DOJ is inserted unfounded political rhetoric from a liberal newspaper into a judicial system that should be equally cognizant and protective of the accused. DK, as a Defendant in the DOJ action and citizen has fundamental rights such as the right to conduct cross-examination while looking at that accuser in the eyes – rather than seeing and hearing that person on some remote video conferencing monitor or a telephone line which necessarily disrupts the whole process; fundamentally, procedurally, and substantively.

79. The DOJ did not even provide this court with the process the Court must follow under the controlling rule which discusses this extreme request and tellingly does not convey to the court that many aspects of the rule are NOT discretionary. Before we address the specifics of the controlling rule, in this case *45.400,* which, in my experience, always seems to be a good idea, let us look at and review the policy of the United States Immigration and Customs Enforcement, Directive Number 11072.1 ("Directive") which directly addresses Civil Immigration Enforcement Actions inside Courthouses. *See Directive 11072.1 Exhibit omitted.* In contrast to the State of Oregon's biased political argument in these judicial proceedings, the Directive is in place for safety concerns and the policy is predicated on legitimate interests common to all United States Citizens, unless of course one's interest is motivated by espousing political opinion and creating uncalled for political discord, rather than something legitimate such as crime, safety, overcrowded prisons, illegal immigration, economics, job security for citizens, jobs, healthcare, taxes, social security, Medicare, Medicaid, government resources, and yes, border control.

80. The State's second reason for desiring remote location testimony essentially

argues that DK is not entitled to fundamental fairness and due process and he is thus not entitled to effectively cross-examine witnesses whose testimony may very well be outcome determinative.

81.     The State has not gone through any of the factors in its motion to provide this Court an analysis to demonstrate good cause for granting its Motion. That is because none apply. Even (3) (b) (E), the catch-all factor, does not apply. The State has simply argued that the newspaper article is sufficient in that the article has caused fear and trepidation among the victims of the fraud alleged in this case as to appear to testify at trial in this matter against Defendants. Newspapers are and will never be an authority upon which any court should rely.

82.     On the other hand, all of the factors supporting a finding of prejudice do exist: The ability to evaluate the credibility and the demeanor of the fact witnesses is critical to the outcome of the proceeding; the issues which these witnesses will address will be determinative of the outcome of the proceedings; there are many exhibits that the witnesses will be asked to review including, but not limited to, advertising videos, interview sheets, non-attorney disclosures, retainer contracts, hotel reservation documents, payment documents, their declarations, and other documents produced through the discovery process; the nature of the proceeding does not concern Khullar's physical liberty but it does concern his ability to practice immigration law in Oregon, and of course his desire to vindicate the smear campaign the Attorney General's Office, orchestrated by Mr. DeHaan has lodged against him; and finally, there are many other circumstances that require these witnesses to appear to live which will be discussed in further detail at the hearing.

83.     Again, what is equally troubling is that Plaintiff does not even identify these individuals who it is so concerned about, and does not even state what their legal status, or

otherwise, is here in the United States – irrespective of whether Portland is a sanctuary city or not.

84.     The State of Oregon tellingly did not cite any authority although its Motion has a section entitled "Points and Authorities". It is understandable because there is only one decision in Oregon that addresses the issue and it is NOT favorable to the State's position. *See Department of Human Services v. K.A.H., 278 or. App 284 (Or. App., 2016).* The only issue the court in K.A.H had to address in reversing the lower court was the fact that the appellate court was persuaded by the mother's contention that the juvenile court made a procedural error in allowing Dr. Valvano to appear by phone under ORS 45.400. The standard of review was not an abuse of discretion but rather legal error as discussed within the opinion. The unidentified fact witnesses in the case at bar is able to testify to anything admissible as it relates to Khullar, will most likely testify to matters that in all likelihood will be determinative of the outcome of the case - favorable or not. They are the so-called victims and thus, any allegation of deceptiveness must be related – in some way – to them. Even though the K.A.H. decision was based on an earlier version of ORS 45.400, the rationale in its ruling is applicable here and warrants a consistent ruling by this Court. Although the OJUD denied this motion, the DOJ's intent to deprive is nevertheless apparent in its fallacious argument presented.

### *The OSB Case*

85.     OSB and the OJD have also deprived Plaintiffs of fundamental rights. The OSB filed a case in The Circuit Court of the State of Oregon for the County of Multnomah, Case # 18CV31833; Oregon State Bar, a public Corporation of the State of Oregon v. Khullar P.A., Divya Khullar Esq. et.al. *See complaint attached as Exhibit "K".*

86.     At the time the OSB filed the complaint in this case, Plaintiffs herein were being

represented by Garrett Garfield Esq. in the DOJ case.

*Deprivation # 1(same claims for relief predicated on the same facts in the DOJ case)*

87.        The DOJ case, although premised in violations of the Oregon Unlawful Trade Practices Act (ORS 646.605), alleges identical facts that OSB alleged in its Complaint (attached as Exhibit "K") filed some eight months after the Complaint was filed in the DOJ case.

88.        The OSB alleged that Plaintiffs failed to supervise the other named Defendants and thus, "requests restitution in the amount of $65,044.00 or an amount proven at trial based on the actual monetary losses…" *See paragraph 19 of the Complaint.* Plaintiff does not provide an accounting as to how it arrived at the amount sought. The restitution amount appears to be arbitrary. At the very least, this amount is not supported by any detail within the Complaint and these allegations are identical to those made in the DOJ case.

89.        In paragraph 20 of the Complaint, the OSB also seeks an injunction prohibiting Defendants from essentially doing any further business in Oregon – as does the DOJ.

*Deprivation # 2 (not providing notice of multiple proceedings to Plaintiffs)*

90.        As of October 5, 2018, Plaintiffs were no longer being represented in the OSB case when Mr. Garfield filed a Motion to Withdraw. Mr. Garfield had previously agreed with opposing counsel for an extension through and including November 2, 2018, in which to respond to the OSB complaint. It was and has always been the intent of Plaintiffs to vigorously defend the OSB action. In fact, in the middle of October 2018, DK requested a further extension on two (2) different occasions.

91.        DK inadvertently forgot to file a responsive pleading before November 2, 2018, and Sykes never responded directly to DK's requests. DK at all time material was in need of an extension because he was in midst of trying to make sense out of all that was happening to him

because of the criminal activities of others with whom he was once associated. During this period, DK was gathering what evidence was available to him which could corroborate his allegations against others of fraud, civil theft, and conspiracy to commit fraud, in order to draft and file a Verified Complaint for Damages in Broward County, Florida (the "Broward Case") referred to in paragraphs below.

92. In addition to the OSB case and the Broward Case, DK was also representing himself in the DOJ case. Of course, there are and were numerous other cases that DK, and his staff, were compelled to address, during the normal course of business.

93. Finally, during this period there were many other personal issues the undersigned was handling at the time which included, but were not limited to, moving from one home to another (in two different cities).

94. Notwithstanding attempts by DK to obtain an extension from Defendant Sykes in which to file a responsive pleading, Defendant Sykes moved forward in procuring judgments, without further notice, to Plaintiffs as more particularly set forth below.

95. Sykes filed a Motion for Order of Default on November 5, 2018, which was not served on Plaintiff until November 13, 2018; Sykes obtained a default on November 19, 2018, without providing Plaintiffs a hearing notice; Sykes filed a Motion for Judgment by Default the following day, November 20, 2018, and served Plaintiff with the motion; However, Sykes appeared at a December 7, 2018 hearing on the Motion for Judgment without notice to Plaintiffs - resulting in a judgment of $152,884.00 against Plaintiffs; On January 4, 2019, Sykes filed a Motion for Attorney's Fees and various declarations without notice to Plaintiffs; Sykes obtained, on February 5, 2019, another judgment in the amount of $83,331.65, of which $82,973.25 was for attorney's fees- again without notice to Plaintiffs. Then, Sykes continues to file pleadings in

the court without notice to Plaintiffs.

96.     On January 3, 2019, concerned that DK was not receiving hearing notices, etc., DK wrote an e-mail to Sykes indicating that he was only in possession of the documents as indicated above. On January 6, 2019, Sykes did not forward anything other than an Acceptance of service executed by Plaintiff's former attorney on August 22, 2018, a certificate of service of a Notice of Intent to apply for an Order of Default dated October 1, 2018, and a certificate of service dated November 13, 2018 of the Motion for Order of Default. Although other documents were requested of Sykes, she chose not to respond.

97.     On November 19, 2018, DK filed the Verified Complaint for Damages against Defendant Emanuel Rosario and others in Broward County, Florida and on December 7, 2018, DK filed a Verified Emergency Motion for Injunctive Relief in the same action. These pleadings directly relate to what is alleged to have taken place in Oregon except they unequivocally demonstrate that during all times material Plaintiffs were being defrauded and lied to, and were the victims of a conspiracy to commit fraud - which may possibly be ongoing. The verified factual allegations in the Broward case are that:

*At all times material, Plaintiff is and has been a practicing attorney, licensed to practice law in both Federal and State Courts of Florida, and operating under the name of Khullar P.A.*

*At all times material, Plaintiff has practiced in different areas of law including, but not limited to, immigration, intellectual property, personal injury, et al.*

*Sometime in or around December of 2016 Plaintiff became interested in expanding his immigration practice to the Miami-Dade County area and soon thereafter became acquainted with Emanuel and Adriana, who claimed to be knowledgeable in the area of immigration and*

who held themselves out to be a marketing expert and immigration paralegal respectively.

Sometime in or around the December of 2016, the parties agreed that Plaintiff would also work out of an office in Miami-Dade County, Florida, that was already being leased by Emanuel and/or Adriana.

This office was located at 13384 SW 128th Street, Miami, Florida 33186.

The work contemplated by the Plaintiff, Emanuel, and Adriana, for which Plaintiff would be involved in Miami-Dade County, was strictly limited to the practice of Immigration Law.

As part of the Immigration practice, Emanuel and Adriana were to assist Plaintiff in various activities including, but not limited to: interviewing prospective clients, meeting with existing clients, collecting documents from the clients and other entities/persons, obtaining information pertinent to the clients' cases, translating documents from Spanish to English, preparing preliminary drafts of immigration forms to be reviewed by Plaintiff, filing documents and forms as directed by Plaintiff, marketing and the development of marketing strategies, and other tasks, all of which were to be accomplished under the direction and control of Plaintiff.

Plaintiff, Emanuel, and Adriana also agreed that any immigration cases they were working on were to be under the direction and control of Plaintiff and they were not to perform any services contemporaneously with any other attorneys.

Emanuel and Adriana were therefore engaged by Plaintiff sometime around the end of 2016 or early 2017 as independent contractors to perform the services reflected above. Such services were to be exclusively limited to only clients who retained the Plaintiff.

Emanuel and Adriana engaged Perez to assist them with the services described above in

*addition to some other administrative/secretarial services.*

*Recently, in 2018, Plaintiff became aware that Emanuel and Adriana were not honoring the above agreement. Instead, it was discovered by the Plaintiff that Emanuel, Adriana, and Perez were engaged in fraudulent activities and unlicensed practice of law. Further investigation revealed that such was going on behind the scene since sometime in 2017.*

*When Plaintiff confronted Emanuel, Adriana, and Perez (collectively the "Trio") with questions about the illegal activities, without knowledge or consent of Plaintiff, the Trio, with the assistance of Caicedo and the P.A. started engaging with Plaintiff's existing clients, all which were retained by Khullar P.A.*

*Upon information and belief, such acts constituting fraud, the unlicensed practice of law, and other illegal activities are more particularly discussed below – and to the extent, they have been able to be uncovered at this time. They include but are not limited to the following and pertain to all Defendants collectively unless otherwise stated:*

*a)      Retaining clients without the knowledge and consent of the Plaintiff;*

*b)      Receiving fees from clients without the knowledge and consent of the Plaintiff;*

*c)      Depositing funds received from clients, unknown to Plaintiff, in unauthorized accounts;*

*d)       Depositing funds received from clients, unknown to Plaintiff, in personal accounts belonging to Defendants;*

*e)      Failing to disclose clients who executed retainer agreements with Khullar P.A.;*

*f)      Drafting and completing documents neither reviewed nor approved by Plaintiff;*

*g)      Signing legal documents and other documents containing the name of the Plaintiff's law practice without the knowledge and consent of the Plaintiff;*

*h)*      *Forging the Plaintiff's name on legal documents and other documents containing the name of the Plaintiff's law practice without the knowledge and consent of the Plaintiff;*

*i)*      *Transferring some or all of Plaintiff's files to Caicedo and the P.A.'s office located at 12001 SW 128th Court, Suite 209, Miami, Florida 33186 without Plaintiff's knowledge and consent;*

*j)*      *Having Caicedo and the P.A. work on Plaintiff's file without Plaintiff's knowledge and consent, without the clients' knowledge and consent, and without the attorneys and clients entering into participation agreements as required by the Rules Regulating The Florida Bar;*

*k)*      *Utilizing the Plaintiff's stationery as if Plaintiff were sending out the legal correspondence and documents;*

*l)*      *Making it appear that Caicedo was an attorney associated with Khullar P.A. and working out of Khullar P.A.'s Miami-Dade office;*

*m)*      *Having clients make payments directly to Caicedo and/or his P.A.*

*n)*      *Having opened a P.O. Box for Khullar P.A., without Plaintiff's knowledge and consent, in order for the Defendants to receive correspondence and documents related to the handling of immigration matters;*

*o)*      *Having opened payment accounts with credit card companies for payments by Plaintiff's clients to Caicedo, Caicedo P.A., and personal or business accounts owned by either Emanuel and/or Adriana;*

*p)*      *Having told Plaintiff that business was proceeding well and in due course notwithstanding their having engaged in the foregoing illegal activities;*

*q)*      *Caicedo and the P.A. stating that they have ended all relationship with Emmanuel, Adriana, or Perez while being actively engaged in the foregoing activities.*

r)      *Caicedo and the P.A. having told Plaintiff that they were unaware of any of the foregoing activities; and*

s)      *Having committed other fraudulent and illegal acts without Plaintiff's consent to be learned through discovery.*

98.     On December 19, 2018, a hearing was held on Defendants' Verified Emergency Motion for Injunctive Relief in the Broward Case. The Court granted the Motion, a proposed order was sent to the Judge, and an Order was eventually entered by the Court on January 8, 2019 – *See Order entered January 8, 2019, attached as Exhibit 'L''.*

99.     Thereafter, at the request of Plaintiffs, Federal Bureau of Investigation agents met with DK at his office in Tamarac, Florida on January 17, 2019, at which time DK presented the agents with all documents gathered during the past few months.

100.    All of the foregoing events were shared with all of the Defendants named herein, yet all Defendants have proceeded as they have.

101.    During the past several months, and as explained somewhat in the Verified Complaint for Damages in the Broward Case, DK has been focused on reviewing more than 535 immigration files that he has managed to claw back from the Defendants in the Broward Case who were resisting all efforts to turn over the files.

102.    Since the middle of 2018, DK has been overwhelmed by the events he has been faced with relating to the immigration department of his law practice. DK has had to sever relations with the Rosarios and Luisa Perez and has had to hire an immigration paralegal to assist in reviewing all the files.

103.    With the assistance of the paralegal, DK at all times material has had to personally handle the administrative obligations of these files which were previously being

handled by no less than three (3) paralegals/assistants at an office which has in the interim been closed. Not only do the heretofore referenced exhibits outline some of the issues, but also such issues are memorialized in a "Civil Theft Letter" that was written to all named Defendants in the Complaint on September 13, 2018.

104.    In addition to the review of numerous files, Respondent has personally responded to calls from dozens of upset clients who had been defrauded by the Rosario and others. On several occasions, the Respondent received calls threatening physical harm to him and his staff.

### Deprivation # 3

105.    Notwithstanding the foregoing, Defendants Sykes and the OSB refused to agree to set aside the judgments and then scheduled Plaintiffs' Motion to set aside the Judgments on April 17, 2019, without notice to Plaintiffs. The OJUD denied Plaintiff's Motion.

> **ORP 71 B(1) provides that:**
> "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; ………(d) the judgment is void; or (e) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application. A motion for reasons (a), (b), and (c) shall be accompanied by a pleading or motion under Rule 21 A which contains an assertion of a claim or defense. The motion shall be made within a reasonable time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment. A copy of a motion filed within one year after the entry of the judgment shall be served on all parties as provided in Rule 9 B, and all other motions filed under this rule shall be served as provided in Rule 7. A motion under this section does not affect the finality of a judgment or suspend its operation.

106.    A Court's and the parties' interest should be in deciding a case correctly, based on legal and factual merit, outweigh the corresponding interests in finality reached by virtue of a default and default judgment. The court should, whenever possible, decide a case on the merits.

The finality achieved through the entry of default should give way to the competing interests of reaching a correct result on the actual merits of a lawsuit.

107.     Setting aside the default would not have prejudiced the OSB but would have restored the parties to an even footing in the litigation and would have allowed the OSB case to be determined on the merits. While the resolution of the case may have been delayed because of DK's excusable neglect, such delay would not have resulted in the loss of evidence or increased difficulties of discovery. In any event, Sykes scheduled Plaintiffs' motion unilaterally, did not advise Plaintiffs and thus, prevented Plaintiffs from their procedural due process rights which, apparently, the OJD had no issue with.

### Deprivation # 4

108.     Sykes and the OSB, ever since obtaining the illegal judgments, have been; forwarding correspondence and copies of the judgment to DK's clients, advising Khullar's client's to file complaints with the Florida Bar; and have been providing Khullar's clients with Florida Bar Complaint forms to facilitate the process. Upon information and belief, OSB and Sykes have also been advising Khullar's clients how the complaint should read. Incredibly, many of these clients do not speak a word of English, yet the complaints suggest that they do. The OSB and Sykes, upon information and belief, have been justifying their actions by expressing to the clients that the Court has given them the authority to do what there are doing when the Court has not.

109.     The actions of the OSB and Sykes are such that they are interfering with DK's attempt to review the files and do what is necessary to assist the clients from the harm that was caused by the criminal acts of third persons, as described in the Verified Complaint filed in Broward County, Florida.

## COUNT I - IX
### Fifth and Fourteenth Amendment
### Procedural Due Process Pursuant To 42 U.S.C. § 1983 against DOJ

110.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

111.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law" U.S. Const. amend. XIV, § 1.

112.    Each act listed in deprivation 1-9 above for the DOJ case constitutes a count under the Due Process Clause pursuant to 42 U.S.C. § 1983, and in addition Plaintiffs are of the belief that DOJ intentionally disregarded Plaintiffs' due process rights.

113.    By these actions, Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

## COUNT X-XIII
### Fifth and Fourteenth Amendment
### Procedural Due Process Pursuant To 42 U.S.C. § 1983 against OSB and Sykes

114.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

115.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law" U.S. Const. amend. XIV, § 1.

116.    Each act listed in deprivation 1-4 for the OSB's case listed above constitutes a violation of Plaintiffs' due process clause.

117.    In addition to the deprivations 1-4 above related to the conduct of OSB and Sykes, Plaintiffs are of the belief that OSB and Sykes intentionally disregarded Plaintiffs' due process rights.

118.    By these actions, defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for defendants' continuing unlawful conduct, and defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

**COUNT XIV-XXVI**
**Fifth and Fourteenth Amendment**
**Procedural Due Process Pursuant To 42 U.S.C. § 1983 against OJUD**

119.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

120.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law" U.S. Const. amend. XIV, § 1.

121.    By rubber-stamping all illegal acts as listed in the deprivations 1-9 for DOJ's case and deprivations 1-4 above for OSB case, the OJUD has violated Plaintiffs' due process rights and each act constitutes a count.

122.    Additionally, Plaintiffs are of the belief that OJUD intentionally disregarded Plaintiffs' due process rights.

123.    By these actions, Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

**COUNT XXVII-XXXV**
**FOURTEENTH AMENDMENT**
**Deprivation of Equal Protection U.S. Const. Amend. Xiv by the DOJ**

124.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

125.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

126.    Plaintiffs state this cause of action against Defendants in their official capacities as officers of DOJ for the purposes of seeking damages, declaratory relief, and injunctive relief, and challenge both facially and as applied to them.

127.    Each deprivation 1-9 under DOJ's case above constitutes a separate count under the equal protection clause of the United States.

128.    By these actions, Defendants are irreparably harming Plaintiff. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

## COUNT XXXVI-XXXVIII
## FOURTEENTH AMENDMENT
### Deprivation of Equal Protection U.S. Const. Amend. Xiv by the OSB

129.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

130.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

131.    Plaintiffs state this cause of action against Defendants in their official capacities as officers of OSB for the purposes of seeking damages, declaratory relief, and injunctive relief, and challenge both facially and as applied to them.

132.    Each deprivation 1-3 under OSB's case above constitutes a separate count under the equal protection clause of the United States.

133.    By these actions, Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiff's legal rights unless enjoined and restrained by this Court.

## COUNT XXXIX-XLVII
## FOURTEENTH AMENDMENT
### Deprivation of Equal Protection U.S. Const. Amend. Xiv by the OJD

134.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

135.    The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

136.    Plaintiffs state this cause of action against Defendants in their official capacities as Oregon Judges and employees of OJD for the purposes of seeking damages, declaratory relief, and injunctive relief, and challenge both facially and as applied to them.

137.    Each 1-9 under DOJ's case above and deprivation 1-3 under OSB's case above constitutes a separate count under the equal protection clause of the United States.

138.    By these actions, Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

## COUNT XLVIII
### Fifth Amendment and Sixth Amendment
### Violation of Right to Counsel (DOJ and OSB)

139.    Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

140.    Sykes and DeHaan engaged in extrajudicial communication with Mr. Ridell and the Plaintiff is of the belief that the intent of this communication was to influence Mr. Ridell's decision not to represent Plaintiffs.

141.    Defendants have such a fundamental interest in planning their defense free from undue government interference. See Powell v. Alabama, 287 U.S. 45, 53 (1932); United States v. Kikumura, 947 F.2d 72, 78 (3d Cir. 1991).

142. Due to the government's (DOJ and OSB) infringement of Plaintiffs' rights under the Fifth and Sixth Amendments of the United States Constitution, Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

**COUNT XLIX**
**Common Law Tortious Interference with**
**Plaintiff Constitutional Rights (All Defendants)**

143. Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

144. Due to the Defendants intentional interference with Plaintiffs" rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

**COUNT L**
**Constitutional Tortious Interference with**
**Plaintiff Constitutional Rights (All Defendants)**

145. Plaintiffs incorporate paragraphs 1 through 109 as though fully set forth herein.

146. Due to the Defendants' intentional interference with Plaintiffs' rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution Defendants are irreparably harming Plaintiffs. Plaintiffs have no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiffs' legal rights unless enjoined and restrained by this Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests the following relief:

1. Declaratory Judgment. A declaratory judgment that –

A.      Official Capacity Defendants violated Plaintiffs' due process rights as a citizen under the Fifth Amendment to the United States Constitution

B.      Official Capacity Defendants violated Plaintiffs' due process rights as citizens of the United States.

C.      Official Capacity Defendants violated Plaintiffs' right to legal counsel under the Fifth Amendment to the United States Constitution by interfering Plaintiffs' attempts to retain an attorney.

D.      Official Capacity Defendants violated Plaintiffs' right to procedural due process under the Fifth and Fourteenth Amendment to the United States Constitution.

E.      Some or all Individual Defendants violated Plaintiffs' substantive due process rights.

F.      Individual Defendants Brian DeHaan and Diane Sykes violated Plaintiffs' right to legal counsel under the Fifth and Sixth Amendment to the United States Constitution.

2. Injunction. An injunction requiring that –

G.      Official Capacity Defendants do not deny Plaintiff written notice.

H.      Official Capacity Defendants, DOJ, OJD, and OSB cease all illegal activities.

3. Damages.

I.      Enter judgment against Oregon State in an amount to be determined at trial but not less than fifty million dollars ($50,000,000.00), plus punitive damages in an amount to be determined at trial, for the violation of Plaintiffs' clearly established constitutional rights,

statutory rights, and common law rights as alleged herein.

J.       Enter judgment against each individual defendant sued in their individual capacity for damages according to proof pursuant to 18 U.S.C. § 2712.

K.       Further, it is requested that Plaintiffs be awarded reasonable attorneys' fees pursuant to 28 U.S.C. § 2412(d), 18 U.S.C 2707(b), 18 U.S.C. § 2712, 50 U.S.C. § 1810, and costs, and expenses of all litigation.

4. Other Relief. Such other relief as the Court may deem just and proper.

Respectfully Yours,

_____

Divya Khullar, Esq.
Florida Bar No. 0101116
**Khullar P.A.**
4786 W. Commercial Blvd.
Tamarac, Florida 33319
Phone: (954) 642-2308
Fax:     (754) 999-7057
notices@khullarlaw.com
*Attorney for Khullar P.A. and*
*Pro Se*

## **VERIFICATION**

"Under penalties of perjury, I, Divya Khullar Esq, declare that I have drafted the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief."

Khullar P.A
4786 W. Commercial Blvd.
Tamarac, FL 33319
Phone: (954) 642-2308
Facsimile (754) 999-7057
Email: notices@khullarlaw.com
***Pro Se* Plaintiff and Attorney for KHULLAR P.A.**

By: S/Divya Khullar Esq./
Divya Khullar, Esq.
Florida Bar Number 101116